# LeBron v. Morris & Co.

*Statutory Action of Detinue for Bank Check.*

1. *Submission of cause to court without jury under agreed statement of facts; judgment thereon can be reviewed on appeal.*—Where a cause is submitted to the court without the intervention of a jury upon an agreed statement of facts, and upon the facts thus specially stated and found to exist a judgment is rendered, there is, in fact, a special finding of facts within the meaning of the statute (Code, §§ 2743-45), which authorizes the appellate court to examine into the sufficiency of the evidence to support the judgment.

2. *Vendor and purchaser; what necessary to put vendor in default.*— Where there is a contract of sale and purchase of land, in which the vendor covenants that upon the full payment of the purchase price he will convey the land in fee simple, before the vendor can be put in default for non-performance of this covenant, the purchaser must perform his part of the contract by making payment in the manner stipulated therein; and the fact that the vendor was not the owner

of the fee simple title up the time for the making of payment by the purchaser, is not sufficient to put the vendor in default; for the law presumes that the vendor will perform his part of the contract when the condition upon which he is called to act is complied with, though he may be unable to perform such contract a moment before, and that when one undertakes to convey a good title to land upon the payment of the agreed price, he will convey such title upon said payment, though it may appear that up to the moment of making said payment, he is without ability to comply with his undertaking.

3. *Same; action of detinue for bank check as a forfeit upon vendee's failure to purchase; when vendor's want of title no excuse for purchaser's breach of contract* —In an action of detinue for the recovery of a cashier's check, it was shown that the check sued for, substituted by mutual agreement for money, was deposited with the defendants by one P., to be forfeited to the plaintiff if P. failed to purchase and pay for certain lands, as stipulated in a contract entered into between him and the plaintiff. By this contract the plaintiff agreed to convey to P. certain lands upon the payment of a certain stipulated purchase price, and a warranty deed to said land was to be delivered in escrow to the defendants in this case, and upon the delivery by P. to the defendants of a certain number of bonds, issued by a corporation to which P. had conveyed all of his right, title and interest to the land, which bonds were to be delivered by the defendants to the plaintiff in payment of the land, the deed from the plaintiff was to be delivered to P. and the escrow fulfilled. At the time of making this contract, the plaintiff did not own the lands contracted to be sold and conveyed, but, thereafter, obtained warranty deeds from the owners of such lands to him, which were deposited in escrow with the defendants, together with his deed to P. Upon P.'s failure to purchase the land by the delivery of the bonds as contracted for, the plaintiff sued in detinue for the check involved in this case. *Held*: That P. was not relieved from his obligation to deliver the bonds contracted for and to take plaintiff's deed to the land, because the latter did not then have the title to said land, and that P.'s failure to purchase said land and to deliver the bonds, according to the contract, was not superinduced, justified or excused by any alleged or supposed inability on the part of the plaintiff to perform the obligations resting upon him in respect of the title to the land, and that such failure was a breach of the contract by P., and worked a forfeiture to the plaintiff of the check he deposited with the defendants, entitling the plaintiff to recover.

4. *Same; when breach of contract by purchaser not relieved by act of vendor.*—Where a contract for the sale of land provides for a deposit by the purchaser with a third party of $1,000, which is to be forfeited to the vendor if the land is not purchased and paid for as stipulated in said contract, and it is further stipulated that the vendor "and his associates" shall subscribe for $30,000 of the bonds of the corpora-

[LeBron v. Morris & Co.]

tion, which the purchaser is to organize for the purpose of improvement and development of said land, a list of such subscribers to be deposited with the depositary within ten days from the date of such contract, and it is further provided in said contract of purchase that $800 of the $1,000 to be deposited (the other $200 having been previously deposited) is to be deposited with such third person upon the deposit with him by the purchaser of the list of solvent subscribers to the bonds as stipulated, and upon such list being to the satisfaction of the purchaser,—upon the deposit of the list of subscribers to the required number of bonds, which list was approved by the purchaser, who had previously deposited the whole of the $1,000, the fact that the vendor and one of his recognized "associates," who were among the subscribers to said bonds, were insolvent, will not relieve the purchaser from his forfeit of the $1,000 for his breach of the contract, by failing to purchase and pay for the land as stipulated; he having required in said contract that the vendor and his associates should subscribe for said bonds, and having approved the list deposited and having waived his right to object to it by depositing the whole of the $1,000, without waiting for the deposit of the list of solvent subscribers to said bonds.

5. *Same; where acts of vendor do not amount to waiver of breach by purchaser.*—Where, in a contract for sale and purchase of land, the purchaser binds himself to organize a corporation for the improvement and development of such land, and to convey all his right, title and interest therein to such corporation, and it is stipulated in said contract, that upon the delivery of a certain number of bonds issued by said corporation to the vendor, he is to deliver a deed to the said lands to the purchaser, having previously obtained a conveyance of them from the owners, the fact that after the breach of contract of sale by the vendee's failure to purchase and pay for the land, as stipulated in said contract, the vendor, who had been made president of the corporation for the development of said land, accepted, as president and by the direction of its board of directors, a conveyance of said lands from their owners direct to the corporation, instead of to him as an individual, and as such president executed to the owners a contract of the corporation to pay the purchase price for said land, thereby rendering impossible the performance of his part of the contract with said purchaser, does not amount to a waiver of the breach of the contract by the vendor, or of any individual rights which may have become vested in him by reason of the purchaser's default; the purchaser's breach of contract preceding and being the cause of the different transaction, and the vendor acting in a ministerial and not in an indvidual capacity in his accepting the deed and executing the contract.

APPEAL from the Circuit Court of Montgomery.

Tried before the Hon. JOHN R. TYSON.

This was a statutory action of detinue, brought by the

appellants against the appellees to recover a bank check. The facts of the case are sufficiently stated in the opinion.

The cause was tried by the court upon an agreed state-ment of facts, and without the intervention of a jury.

There was judgment for the defendants. The plain-tiffs appeal, and assign the rendition of this judgment as error.

PHARES COLEMAN and FRANCIS G. CAFFEY, for appel-lants.—The contention of counsel for the appellee that the judgment in this case can not be reviewed by the Supreme Court is untenable. The case as presented to the lower court does not come within the influence of the statute referred to. Sections 2743, 2744 and 2745 of the Code can have no reference to cases arising like the present one. In the case at bar there was no issue of fact between the plaintiff and the defendant. The facts were agreed upon without dispute, and were submitted to the court for a judgment of the law to be passed up-on them. It was as if there had been an examination of witnesses in the case, and after hearing their testimony the jury had determined that such facts were proved. The decisions in which each of the sections of the Code above referred to are construed, have reference to the judgment of the lower court when the judge, by agree-ment of parties, is made the trier of the facts, instead of the jury—when there is an issue of fact, some dispute between the parties as to what are the facts in the case. But when there is no dispute as to what the facts of the case are, and the only office the judge has to perform is, to determine what is the law relative to the facts agreed upon, the sections referred to are not applicable. The judgment of the judge, under such circumstances, is his judgment on the law of the case, and is revisable on appeal.—*Shaw v. Beers*, 25 Ala. 449; *Mims v. Sturdevant*, 23 Ala. 664; *Gaillard v. Duke*, 57 Ala. 622; *Bradley v. An-dress*, 30 Ala. 80; 1 Brick. Dig. 775, §§ 23–24. The judge, in rendering judgment in such a case, presents the same question for review as is presented upon the facts agreed upon had he given or refused the general affirmative charge for the plaintiff, if the trial had been had before a jury. In none of the cases considered by this court, where the sections referred to have been held to

apply, has there been a submission upon an agreed statement of facts.—*Quillman v. Gurley*, 85 Ala. 594; *Nooc v. Garner*, 70 Ala. 443.

There was a breach of the contract on the part of Pickering, entitling LeBron and associates to the forfeiture deposited, because there was a failure to purchase and pay for the land in the manner agreed upon. There was no delivery of the bonds, and there was no redemption of them within the time specified.—*Bridgeport. L. & I. Co. v. Amer. Fire. P. &c. Co.*, 94 Ala. 592; Warwell on Vendors, p. 206.

Defendants' contention, that LeBron was never in a position to carry out his contract for the conveyance of the land, can not be sustained either by the facts or on principle. The sole object Pickering had in making said contract with LeBron was to get the franchise granted to LeBron, Dexter and Coleman transferred for a certain considertion to a corporation to be organized by him, and to get the 232 acres of land conveyed to him, and through him to said corporation, he not paying for said 232 acres more than $100,000, the agreed purchase price. Pickering knew when he entered into the concract, that LeBron did not own but a very small interest in a portion of the land. He also knew, therefore, that the land had to be conveyed to LeBron from the owners, and that LeBron expected to pay these owners out of the money he, Pickering, had agreed to pay him. The law and the facts and circumstances of the case show this.— *McGhee v. Alexander*, 104 Ala. 116.

The gist of the present action is the wrongful detention of the check. Upon what does this wrongful detention depend? When does the wrongful detention commence? The contract says upon Pickering failing to purchase the land and construct the road as he covenanted to do. The contract does not say that the check or money shall not be forfeited to LeBron, if LeBron fails to perform his part of the contract; but it expressly says it is to become LeBron's property if Pickering does not do what he covenants to do. The stipulation is for LeBron's and his associates' benefit solely; and Pickering himself can not defend against his own breach in this action.— *Jones v. Pullen*, 66 Ala. 306; *Stone v. Gover*, 1 Ala. 287; *Bass v. Galliland*, 5 Ala. 761. Not having any right to the check sued for, they have no right to defend,

and after forfeiture, which has been shown to have taken place, they are merely wrong-doers, and their attempted defenses must fall.—*Brandon v. Montgomery Iron Works*, 96 Ala. 506 ; *McGhee v. Alexander*, 104 Ala. 116.

TROY & WATTS, *contra.*—There were no legal objections by the appellant which were not sustained by the judge, and, therefore, there are no exceptions to his rulings on testimony, and the only questions presented for review is the decision of the court on the facts. Sections 2743 to 2745 of the Code of 1886, provide for the trial by the court of a cause without the intervention of a jury, whenever the parties so agree in writing. Either party may demand a special finding, or the court may make a special finding *ex mero motu*. If either party demands a special finding or if the court makes a special finding, the Supreme Court has a right to inquire into and examine the evidence upon which the finding was had, to ascertain whether or not the judgment of the court is correct.—*Sayre v. Weil*, 94 Ala. 466. But, if the finding of the court is general, then said finding is not reviewable by the Supreme Court on appeal, but has the same force and effect as the verdict of a jury and is conclusive.—*Quillman v. Gurley*, 85 Ala. 595 ; *Calloway v. State*, 75 Ala. 37; *Bell v. State*, 75 Ala. 27 ; *Knowles v. State*, 80 Ala. 9. The only judgment shown in the record is the judgment of the court upon the facts submitted to it without the intervention of a jury. There is no special finding shown, and the record nowhere shows that any special finding was requested, and the judgment must be affirmed.—*McCarthy v. Zeigler*, 67 Ala. 43 ; *Quillman v. Gurley*, 85 Ala. 595.

It is a well recognized principle of the law that the plaintiff can not recover unless he makes out his case. He cannot complain of the failure of the defendant to keep his contract, unless he, the plaintiff, shows by the evidence that he has performed all that was required of him. These principles of the law need no authorities to support them.

A condition of the contract, so far as LeBron was concerned, was that he should give a warranty deed to the two hundred and thirty acres of land. He did not own any of this land except seven-tenths of the one-fifth in the

one hundred and forty-three acres known as the Graham land, and that interest of his was mortgaged to McClellan and Scheerer. McClellan and Scheerer owned all the balance of this one hundred and forty-three acres of land except three-tenths of one-fifth which Agee owned. LeBron had no interest whatever in the Allen land. He was to acquire no interest in that land except upon the payment of ten thousand dollars. He was never entitled to the said Allen land, because the deed was placed in the hands of Morris & Co. as an escrow to be delivered to him only on the payment of said ten thousand dollars. He never paid it, and therefore he was never in a position to convey the same to Pickering. The purpose of the purchase by Pickering of these lands was to form a corporation for the development of said lands, and one thing to be done in reference to the purchase was the issue of bonds of the corporation to a large amount on this identical land and on the other part of the corporation, and LeBron agreed that he would accept one hundred and twenty-five thousand dollars worth of said bonds in payment for the said lands. Pickering certainly could not mortgage the lands, and the corporation could not mortgage them and issue its bonds under said mortgage, until it had acquired a title to said lands and it never could have acquired a title to said lands until LeBron had executed a warranty deed of the same, either to Pickering or to said corporation. LeBron, of course, could not execute a warranty deed until he had paid to McClellan and Scheerer the forty-eight thousand dollars which he was bound to pay to them for the one hundred and forty-three acres of land and until he had paid Allen the ten thousand dollars which he had agreed to pay to Allen for the Allen land. LeBron claims a forfeiture by Pickering of the one thousand dollars and claims the right to recover the check for the same in a suit in detinue without showing a compliance on his part with the conditions precedent to his right to said check. If this was a suit by LeBron against Pickering for the specific performance of said contract he would be required to show in order to obtain a decree of the court of equity enforcing the performance, that he had performed all parts of the contract which were required of him.—*Florence G., E. L. & P. Co. v. Hanby*, 101 Ala. 15; *Haggerty v. Elyton Land Co.*, 89 Ala.

428. When LeBron, as president of the Cloverdale Land & Development Co., accepted from Pickering a conveyance of the one hundred and forty-three acres of the Graham Land, and part of the same land which he had agreed to convey by warranty deed to Pickering; and when LeBron, as president, executed in the name of the Cloverdale Land and Development Co. the eighty-five thousand dollar obligation to McClellan and Scheerer, he thereby consented to the change necessarily made in the terms of the contract, shown as exhibit A. to the agreement of facts, and waived all rights which he had under the claim of forfeiture against Pickering.

The question in this case is not whether Pickering kept his contract, but the question is did LeBron keep his. In order to recover, LeBron, being the plaintiff, must clearly show his right to the same. His right of recovery is not dependent so much upon failure, if there was a failure on the part of Pickering to keep his contract, as it is upon the question whether or not LeBron performed the contract on his part. He must recover on the strength of his title, and not upon the weakness of that of his adversary.—*Parson v. Boyd*, 20 Ala. 112; *Frierson v. Frierson*, 21 Ala. 549; *Price v. Talley*, 18 Ala. 21; *Reese v. Harris*, 22 Ala. 301. That Morris & Co. can make this defense see *Behr v. Gerson*, 95 Ala. 438.

McCLELLAN, J.—All the facts of this case were agreed upon by the parties and stated in writing to the court. And upon the facts thus agreed upon and presented to the court there was, also by agreement, a trial of the case by the judge of the court without jury. The conclusion and judgment of the court was in favor of the defendants; and it is argued that we can not review that conclusion and judgment because there was no special finding of the facts by the judge, reliance being had in support of this position upon *Quillman v. Gurley*, 85 Ala. 594, and the cases there cited. The argument and position are untenable. We do not in the least question the soundness of *Quillman v. Gurley* or the other cases in that line of authority, but to the contrary reaffirm them. The infirmity of appellees' contention lies in its assumption that there was no special finding of the facts in this case. The court took the agreed statement of facts, covering, as it did, every fact in the

case, as true and for all practical purposes found these facts to be true; and upon the facts thus specially stated and found to exist the judgment was rendered. This, we do not doubt, was a special finding of the facts within the statute and the adjudged cases, and the judgment upon them is in principle as open to review by this court as if there had been a jury, a special finding of these facts by them, and a charge to find for the defendants upon them with exception reserved.—*Skinner v. State,* 87 Ala. 105; *Hardy & Co. v. Ingram,* 84 Ala. 544.

This is an action of detinue prosecuted by LeBron *et al.* against Josiah Morris & Co., for the recovery of a cashier's check which was deposited with the defendants by one Pickering for delivering to the plaintiffs, if said Pickering should fail to comply in certain particulars with the terms of a contract entered into by and between him and LeBron and associates. The stipulation of this contract providing for the deposit of this check, or rather money for which the check was substituted by mutual agreement, is as follows: "It is further understood and agreed that said F. B. Pickering shall deposit with Josiah Morris & Co. one thousand ($1,000) dollars to be forfeited to said A. W. LeBron if the land is not purchased and paid for and the electrical street railway is not constructed and put into operation as hereinbefore covenanted and agreed. Two hundred ($200) dollars of said amount is to be deposited upon the organization of a street railway company by said A. W. LeBron, R. P. Dexter and Phares Coleman, and the transfer by said LeBron, Dexter and Coleman to said F. B. Pickering of all rights, franchises, stock, property &c. they may have in said street railway company; and the remaining eight hundred dollars ($800) of said one thousand dollars ($1,000) is to be deposited with the said Josiah Morris & Co. upon the deposit with said Josiah Morris & Co. by said A. W. LeBron of a list of solvent subscribers to said bonds as required and stipulated for by the 6th article of this agreement, and to the satisfaction of the said F. B. Pickering. It is further understood and agreed that said one thousand dollars ($1,000) so deposited as a forfeiture can be withdrawn from said bank at any time by a mutual agreement and consent by said A. W. LeBron and M.

A. Williams.'' The stipulations of said contract in respect of the purchase by Pickering of the land referred to above are contained in paragraphs 1, 3, 4, and 5 of the contract, as follows: ''First: The said A. W. LeBron, for the considerations and upon the conditions hereinafter mentioned, covenants and agrees to convey to the said F. B. Pickering in fee simple by warranty deed two hundred and thirty-two (232) acres of land, more or less, known and designated as Cloverdale, and formerly known as the Graham and J. G. Allen lands, being on the east side of the Norman Bridge road, south of the city of Montgomery, and bought by the said A. W. LeBron and associates from the South Montgomery Land Co The said warranty deed by said A. W. LeBron and associates is to be delivered in escrow to Josiah Morris & Co. to be delivered by them to F. B. Pickering, or assigns, upon the payment by him of the consideration and the performance of the conditions hereinafter mentioned, which conditions form a part of these articles of agreement.'' ''Third: The purchase price of the land herein agreed to be conveyed by the said A. W. LeBron and associates to said F. B. Pickering is one hundred thousand dollars ($100,000) which purchase money the said A. W. LeBron hereby agrees can be paid by the said F. B. Pickering by bonds of the corporation, formed and organized as covenanted and agreed in the second article of this agreement, at a valuation of eighty (80) cents on the dollar, it being hereby specially covenanted and agreed that the one hundred and twenty-five thousand dollars ($125,000) worth of said bonds, at eighty (80) cents on the dollar hereby agreed to be paid for said lands are to be redeemed and taken up by said corporation at the expiration of twelve months from the execution of this contract together with interest on said purchase money at the rate of 6 per cent. per annum, to be paid by said corporation when said bonds are redeemed. It is also expressly understood and agreed between the parties hereto that said F. B. Pickering, or his assigns, shall have the privilege and option of taking up and redeeming said bonds so given as the purchase price of said land, at any time they may see fit within the twelve (12) months from date of the execution of this contract. Fourth: It is also specially covenanted and agreed by and between the parties hereto that the

[LeBron v. Morris & Co.]

said bonds given in payment of the land, as above stipulated, are to be secured by a first mortgage on all the lands conveyed by said A. W. LeBron and associates and upon the electrical street railway to be constructed and operated by said corporation. *Fifth:* Upon the completion and operation of the ·electrical street railway, and after the execution of a written agreement by said corporation that it will redeem the bonds given for the purchase money of the land, as hereinbefore stipulated, sometime, at its option, within twelve (12) months from the date of this instrument, and upon the delivery by the said F. B. Pickering of the one hundred and twenty-five thousand dollars ($125,-000) in bonds, as above stipulated, to the said Josiah Morris & Co., to be delivered by them to the said A. W. LeBron, it is hereby covenanted and agreed that said deed from said A. W. LeBron and associates to said Pickering shall be delivered by said Josiah Morris & Co., to said Pickering, the escrow being thereby fulfilled, and all right, title and interest in said lands be vested in said Pickering." The bonds above referred to were those to be issued by a corporation which Pickering and his assigns, successors, &c., were to organize "for the development and improvement of said land and the construction and operation of an electric street railway," to which corporation Pickering was to assign all his right, title and interest to the land to be conveyed to him by LeBron and associates, as well as all other rights he Pickering was to acquire under the contract. This corporation was organized under the name of the "Cloverdale Land & Development Company." In the agreed statement of facts—to which this contract was an exhibit—it was made to appear that at the time of the entering into this contract LeBron owned no interest in eighty-nine (89) of the two hundred and thirty-two (232) acres of land, which he thus covenanted to convey to Pickering, and that he did not subsequently acquire any interest or title therein or thereto, but this parcel belonged to one Allen. It was also shown that the remaining one hundred and forty-three acres of said land was owned by McClellan and Scheerer, LeBron and one Agee, Agee owning three-tenths of one-fifth (3-10 of 1-5) thereof, LeBron seven-tenths of one-fifth (7-10 of 1-5) undivided interest therein, and McClellan & Scheerer owned the

remaining four-fifths of said land, and also held a mort-
gage executed by LeBron covering his undivided in-
terest in the tract; and LeBron did not subsequently
acquire any additional interest in this tract, except that
of Agee.    There was, however, an agreement on the
part of McClellan and Scheerer to sell their interest in the
land for $48,000, payable, it seems, out of the bonds
which LeBron was to receive from Pickering; and on
the part of Allen to sell his land to LeBron for $10,000,
payable, it seems, in money; and McClellan and Scheerer
and Allen executed deeds to the lands and deposited
them with Josiah Morris & Co., to be delivered to Le
Bron on payment of said sums to them, respectively.
Agee conveyed his interest also to LeBron. It further
appears from the contract and the agreed statement of
facts that LeBron should execute his warranty deed for
the 232 acres of land and deposit it in escrow with said
Josiah Morris & Co., and to them were to be delivered
the one hundred and twenty-five thousand dollars of
bonds which were to pay LeBron for the land, and
upon the deposit of these bonds they were, as we have
seen, to deliver the deed of LeBron and associates out
of escrow to Pickering, whereupon all rights, title and
interest in the land were to vest in said Pickering.   This
deed of LeBron and associates was accordingly duly
signed and deposited in escrow with Morris & Co., and
there is nothing to show or to indicate in any degree but
that it would have been delivered to Pickering had he
deposited the bonds with Morris & Co. as stipulated in
the contract, but, to the contrary, the presumption is
that it would have been so delivered but for Pickering's
failure in that behalf.   On this part of the case, counsel
for the defendant—appellee here—insist that Pickering
was relieved from his obligation to deliver these bonds
and take LeBron's deed to the land, because the latter
did not then have the title to the land, and that his fail-
ure to purchase the land and deliver the bonds under
these circumstances, being as they say, caused, and
therefore justified by LeBron's inability to perform
his part of the contract, was not a breach of paragraph
7 thereof working a forfeiture to LeBron of the check
on deposit with Morris & Co.   We do not concur in this
view.   It is plain upon the very words of the contract
that these bonds were to be prepared, executed, issued

and deposited with Morris & Co. before the delivery by
Morris & Co. of LeBron's deed to Pickering. That deed
being then in escrow, importing a warranty of title, and
imposing a duty on LeBron and associates to acquire the
outstanding titles of McClellan and Scheerer and Allen to
parts of or interest in the land, and by the act of acquisition
vesting these titles in Pickering, there was no obstacle to
the execution by the corporation of the mortgage on the
land to secure the bonds before any title passed into it,
especially since Pickering had already conveyed all the
land to the corporation, and all interests, whether in
LeBron or Allen or McClellan and Scheerer, would im-
mediately, upon the delivery of LeBron's deed out of
escrow and his contemporaneous or subsequent acquisi-
tion of the titles of McClellan and Scheerer and Allen,
have passed through Pickering and through the corpora-
tion into the trustee in the mortgage to secure the bonds.
Certainly the bonds, as we have seen, were to be deliv-
ered in escrow before any conveyance by LeBron and
associates was to be made, and presumably they were
the bonds required by the contract, that is, bonds then
secured by a mortgage on the land and railway; so that
it may well be said that the contract itself provides for
the execution of a mortgage before there had been any
conveyance to Pickering; and that such was the under-
standing of the parties, and especially of Pickering, for
whom this check was deposited, is further evidenced by
the fact, above adverted to, that he, after the execution
and delivery in escrow of the deed by LeBron, and
while it was in escrow awaiting the performance of the
conditions upon which it was to be delivered to him,
"executed a deed to the 232 acres to the Cloverdale Land
& Development Company, on a recited consideration of
payment to LeBron of $100,000, and 1617 shares of the
stock of said company; and he delivered said deed to
the Cloverdale Land & Development Company." So,
it seems clear that the fact that the title to the land was
not in LeBron and associates even up to the time the
bonds should have been deposited with Morris & Co.
was not regarded by either of the parties as presenting,
and did not indeed present, any practical difficulty in the
way of fully consummating the purchase of and pay-
ment for the land in accordance with the terms of the
contract. The bonds were never deposited. At the

time they should have been titles to every interest in the two hundred and thirty-two acres of land were deposited in escrow with Morris & Co.; to whom the bonds were to be delivered. There must have been some object in view in thus providing that the purchase price of the land should be delivered to the parties to whom all the deeds had been delivered in escrow; and it is fairly inferable that this object was that LeBron with the means supplied him by the delivery of these bonds should at once have complied with the conditions of the escrow of McClellan and Scheerer's and Allen's deeds to him, by delivering to the former the $48,000 of bonds they were to receive, and by raising through a hypothecation of the remaining bonds the $10,000 which Allen was to receive, and paying that sum to him, and thus securing the final delivery of those deeds to himself, whereby perfect title to all the land would upon the moment have passed to Pickering. This is probable, but whether so or not is of no consequence. Aside from speculations of this sort, and conceding that Pickering was then to be vested with indefeasible title to all the land and all interests in it, he could not set up the fact of the outstanding titles to relieve him from his obligation to deposit the bonds intended as payment for the land at that time as he had agreed to do. He cannot say, I will not deposit the bonds because you cannot make a good title, for *non constat* but that the moment he does deposit them the vendor will be in a position to execute and pass to him a title in fee simple absolute to all the lands. The law goes on the presumption that the vendor will perform his contract when the condition upon which he is called upon to act comes into being, though he may be unable to perform a moment before. It presumes that when one undertakes to convey a good title to land upon the payment in the way here stipulated of the agreed price, he will convey such title upon such payment, though it may appear that up to the moment when payment is to be made, he is without ability to comply with his undertaking.—*Pate v. McConnell*, 106 Ala. 449. In this case there was full and perfect title to all the land in escrow with Morris & Co. to whom the bonds were to be delivered; the delivery of the bonds was a condition precedent to the final passing of that title to the purchaser. If Pickering had a right to demand a perfect

title, and not merely a warranty deed of LeBron and associates, it is to be assumed that Morris & Co. would not have delivered the bonds to LeBron until he was in a position to make such title, or would at least have so delivered them as to have placed him in that position , through an application of them, directly or indirectly, to the satisfaction of the conditions upon which the deeds of McClellan and Scheerer and Allen to LeBron were held in escrow by Morris & Co. So that we are now to assume that had Pickering deposited the bonds he would at once have received a conveyance of perfect title to all the lands ; and from this follows our conclusion, that his failure to buy and pay for the lands according to the contract was not superinduced, justified or excused by any alleged or supposed inability on the part of LeBron and associates to perform the obligations resting upon them in respect of the title to the land.

But, it is further contended that LeBron and associates failed to comply with the requirements of section 6 of the contract, and in consequence of such failure it ceased to be binding upon Pickering, and he was no longer under any obligation to purchase and pay for the land, &c., &c. That section is in the following terms : "It is further understood and agreed that the said A. W. LeBron and his associaties shall subscribe for at least thirty thousand ($30,000) dollars of the bonds to be issued by said corporation formed and organized in furtherance of this agreement, and for the purpose of the improvement and development of the said lands, and for the construction and operation of an electrical street railway ; and that a list of the subscribers to said bonds be deposited with Josiah Morris & Co. within the next ten (10) days. The bonds so subscribed for by said A. W. LeBron and associates to be sold to him and the subscribers therefor at eighty (80) cents on the dollar ; but said bonds are not to be delivered to said subscribers, nor paid for by them, until after the completion of said electrical street railway." The only other reference to this subscription matter in the contract is contained in paragraph 7, which is set out first above, where it is provided that $800 of the $1,000 deposit—the other $200 having previously been deposited—"is to be deposited with Josiah Morris & Co. upon the deposit with said Josiah Morris & Co. by said A. W. LeBron of a list

9

of solvent subscribers to said bonds as required and stipulated for by the sixth article of this agreement, and to the satisfaction of said F. B. Pickering.'' Thirty thousand dollars in face value of the bonds were subscribed for by LeBron and his associates, and a list of the subscribers setting forth the amount for which each subscribed was duly deposited with Morris & Co. But it appears from the agreed facts that LeBron and Dexter, who was one of his associates, who respectively subscribed for $12,000 and $5,000 of the $30,000 worth of bonds, were insolvent; and upon this is based the insistence that Le Bron and associates had failed to comply with this stipulation and had thereby released Pickering from buying the land, &c. There are several answers to this contention. In the first place, article 6, which alone requires this subscription, does not in terms require the solvency of the subscribers, but it does in terms specifically require that *LeBron and his associates* shall be the subscribers, and the fact is that LeBron and Dexter, one of his recognized associates, are the only insolvent subscribers on the list. It is clear, we think, that Pickering could raise no objection to the list on account of the insolvency of the parties whom he had thus required to become, and agreed to take as, subscribers. In the next place, he did not in fact raise any such objection at the time for it to have been made, if ever, or indeed at any time so far as we are informed. To the contrary, it is made to affirmatively appear in the case that he approved the list thus made and deposited with Morris & Co., and this in the exercise of the power of approval given by the contract itself, as shown above : the statement of facts sets forth that this list "was satisfactory to and approved by F. B. Pickering.'' And, in the third place, the depositing with Morris & Co. of a list of subscribers in accordance with the requirements of the contract was made a condition precedent to the depositing of $800 of the $1,000 which Pickering was to put up to secure his performance of the contract. A list was deposited, and thereupon the whole of the $1,000 was deposited. This in itself was an approval of the list in all respects and a waiver of all objections to it.

It is shown that LeBron and associates organized a corporation to build an electrical street railway, secured certain franchises therefor from the city of Montgomery,

[LeBron v. Morris & Co.]

and transferred and assigned all the property and franchises of said corporation to the Cloverdale Land & Development Company according to the contract, as modified in this respect by a direction of Pickering for an assignment to that company instead of to himself; and that LeBron in all other respects complied with the terms of said contract.

The failure of Pickering to purchase and pay for the land was, our conclusion is, such breach of the contract as worked a forfeiture of the check to LeBron and associates, un'ess the breach was waived by them. The only circumstance relied on as constituting a waiver is, that LeBron,·as president of the Cloverdale Land & Development Company, being empowered and directed thereto by the directors of that company, accepted for the company a conveyance of the McClellan and Scheerer land, and as such president executed to them the contract and agreement of that company to pay the purchase price therefor in a certain specified way. It is true that ever after this transaction it was out of the power of LeBron and associates to acquire that land and convey it to that corporation as was contemplated in the contract between him and Pickering. But Pickering's breach of the contract was prior to this, and McClellan and Scheerer withdrew from the original arrangement and took their deed out of escow before·this, because of such previous breach on the part of Pickering. And, moreover, LeBron's connection with this subsequent matter between McClellan and Scheerer and the Cloverdale Company was merely that of an officer of that corporation, doing ministerially the bidding of its governing body, as in duty bound, and his acts in this capacity cannot be set up as a waiver by himself and associates of individual rights already fully perfected and vested by Pickering's default.

No different conclusion would be reached were we to hold, as we do not, that failure on the part of Pickering and his assigns to build the street sailway according to the terms of the contract was a cumulative condition precedent to plaintiff's right to the check, for we do not find that this obligation was ever waived and it is made clearly to appear that it was never discharged; the road had not been built even at the time of the trial below.

Reversed and remanded.